UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY VOSS,

                Plaintiff,

       -against-

DENIS McDONOUGH, Secretary, Department
of Veterans Affairs,

            Defendant.[1]

**MEMORANDUM OPINION
AND ORDER**

17-CV-09015 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Anthony Voss ("Plaintiff") brings this action against Denis McDonough ("Defendant"), Secretary of the United States Department of Veterans Affairs ("Department") for employment discrimination. Specifically, Plaintiff complains by way of 42 U.S.C. § 2000e that the award rendered following adjudication of his administrative complaint for disability discrimination was insufficient. (Doc. 1, "Compl." ¶¶ 42-56).

    Plaintiff initiated this action on November 17, 2017. (*Id.*). Defendant filed his Answer (with counterclaims) on March 22, 2019 (Doc. 37, "Ans.") and Plaintiff responded to the counterclaims on April 11, 2019 (Doc. 39, "Countercl. Ans."). Thereafter, on September 11, 2019, Judge Kenneth M. Karas—before whom this matter proceeded prior to its transfer to this Court on April 16, 2020—entered a Case Management and Scheduling Order. (Doc. 44). That same day, Judge Karas also entered an Order referring general pretrial issues to Magistrate Judge Judith C. McCarthy. (Doc. 45). On June 1, 2020, days after fact discovery closed, the parties filed a joint letter requesting that this Court stay expert discovery and allow Defendant to move for summary

---

[1] This action was filed initially against one of Defendant's predecessors, former-Department Secretary David J. Shulkin. By operation of Federal Rule of Civil Procedure 25(d), when a public official named in his official capacity no longer holds an office, his "successor is automatically substituted as a party." The Clerk of the Court is respectfully directed to amend the caption to reflect this change.

judgment on liability. (Doc. 71). The parties' explanation was that "liability may be decided on summary judgment based on fact discovery that is now complete," and that "[e]xpert discovery is necessary only if the parties reach the issue of damages." (*Id.*). The Court granted the parties' application, stayed expert discovery, set a schedule for the exchange of their Statements of Material Fact required by Local Civil Rule 56.1, and set a date by which Defendant would file a pre-motion conference letter in accordance with this Court's Individual Practices. (Doc. 72).

During the October 27, 2020 telephonic pre-motion conference, the Court directed, *inter alia*, that Plaintiff revise his opposition to Defendant's Statement of Undisputed Material Facts. (Oct. 27, 2020 Min. Entry). Plaintiff complied and filed his revised Opposition to Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 on November 10, 2020. (Doc. 82, "Pl. 56.1 Stmt. Opp."). Approximately one month later, on December 22, 2020, Plaintiff served his notice of motion (Doc. 94), supporting memorandum of law (Doc. 95, "Def. Br."), Statement of Undisputed Material Fact Pursuant to Local Rule 56.1 (Doc. 96, "Def. 56.1 Stmt."), and the Declaration of Danielle J. Levine (Doc. 97, "Levine Decl."). Plaintiff responded with his opposition brief (Doc. 98, "Opp. Br."), his Affidavit (Doc. 98-1, "Pl. Aff."), and the Declaration of Steven Felsenfeld (Doc. 103, "Opp. Decl.") on February 1, 2021.[2] Defendant served his reply on February 16, 2021. (Doc. 99, "Def. Reply").[3]

For the reasons set forth below, Defendant's motion is GRANTED.

---

[2] Plaintiff filed one copy of this document on February 16, 2021 and, after being granted leave to file a redacted version of an exhibit, re-filed the document in its entirety again on February 25, 2021. The Court cites to the version filed on February 25, 2021.

[3] On December 23, 2020, Plaintiff requested "reconsideration of Plaintiff's request to file [a] formal cross-motion" and sought leave either "to 'cross-move' . . . or . . . move for Summary Judgment" in his own right. (Doc. 88). The Court denied the request, stating, "a summary judgment motion searches the record; Plaintiff may . . . oppose Defendant's motion and argue that summary judgment should be granted to Plaintiff instead." (Doc. 91). As such, while one notice of motion was filed, there are, in essence, dueling summary judgment motions and the Court has considered Plaintiff's request as to each and every theory of liability.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the issues before it and draws them from the Complaint, Answer, Answer to Counterclaims, Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, Plaintiff's Opposition to Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1,[4] the Levine and Felsenfeld Declarations with the exhibits annexed thereto, and Plaintiff's Affidavit.

I.   Plaintiff's Initial Injury and the First EEOC Complaint

Plaintiff was employed by the Department in Montrose, New York, from September 8, 2011 until he was terminated due to "medical inability" on August 11, 2017. (Def. 56.1 Stmt. ¶¶ 1-2; *see also* Levine Decl. Ex. 1 at VA000122-23; Levine Decl. Ex. 2 at VA000208; Levine Decl. Ex. 3 at VA001180-82).

About one year into his tenure, on December 18, 2012, Plaintiff slipped on "a huge pile of geese feces" at work and sprained his knee. (Levine Decl. Ex. 4 at VA000326-27; *see also* Def. 56.1 Stmt. ¶ 3; Levine Decl. Ex. 5 at VA001003-07; Levine Decl. Ex. 6 at 31:5-25). He received benefits under the Federal Employees Compensation Act ("FECA") in connection with this injury. (Def. 56.1 Stmt. ¶¶ 4-5; *see also* Levine Ex. 4 at VA000328; Levine Ex. 5 at VA001003-07).

On April 19, 2013, after being out of work for approximately four months, the Department offered Plaintiff a temporary restricted duty position. (Def. 56.1 Stmt. ¶ 6; *see also* Levine Decl.

---

[4] Local Civil Rule 56.1(b) requires that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civil Rule 56.1(c) warns, by extension, that each paragraph "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Where Plaintiff's Opposition to Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 is unresponsive to the particular fact asserted, the Court deems that fact admitted. *See Colon v. Annucci*, No. 17-CV-04445, 2021 WL 3774115, at *7 n.6 (S.D.N.Y. Aug. 24, 2021).

Ex. 7 at VA001775). Dardanella Russell ("Russell"), Chief of the Department's Human Resource

Management Service in Montrose, explained that the temporary duties, "effective as of April 22,

2013 until May 31, 2013," were within Plaintiff's medical restrictions. (Levine Decl. Ex. 7 at

VA001775). Plaintiff accepted the temporary assignment that same day. (Def. 56.1 Stmt. ¶ 7; *see*

*also* Levine Decl. Ex. 6 at 36:17-22; Levine Decl. Ex. 7 at VA001775). Approximately two months

later, on June 26, 2013, Plaintiff received an e-mail from Christine Fullerton ("Fullerton"), the

Department's Workers Compensation Manager in Montrose, advising in pertinent part:

> The medical documentation does not support continued restricted
> duty related to . . . [the] accepted condition of [k]nee sprain.
> According to the medical guidelines a sprain usually heals within 1-
> 70 days. Your injury was 12/18/12 more than 180 days. You should
> report to work full duty effective immediately.

(Levine Decl. Ex. 5 at VA001014; *see also* Def. 56.1 Stmt. ¶ 8; Levine Decl. Ex. 4 at VA000340-

41). Fullerton counseled further, however, that if Plaintiff could not return to full duty, he could:

(1) request a reasonable accommodation; (2) request an expansion of additional conditions; (3) use

leave until he could return to full duty; (4) apply for unpaid leave under the Family and Medical

Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.; or (5) apply for disability retirement.

(Levine Decl. Ex. 4 at VA000340; *see also* Def. 56.1 Stmt. ¶ 8). Plaintiff opted to return to full

duty in his position as a Housekeeping Aid. (Def. 56.1 Stmt. ¶ 9; *see also* Levine Decl. Ex. 4 at

VA000350).

On July 3, 2013, the day Plaintiff returned to full duty as a Housekeeping Aid, he injured

himself unfolding a conference table. (Def. 56.1 Stmt. ¶¶ 9, 11; *see also* Levine Decl. Ex. 4 at

VA000351-52). Approximately one week later, on July 10, 2013, Plaintiff contacted the

Department's Office of Resolution Management to complain about, *inter alia*, his assignment on

July 3, 2013. (Def. 56.1 Stmt. ¶ 14; *see also* Levine Decl. Ex. 9 at VA001624-26). The resulting

Equal Employment Opportunity Commission ("EEOC") Complaint, EEOC No. 520-2015-

00108X, asserted that Plaintiff was discriminated against on the basis of his disability when he was charged with Leave Without Pay from July 1, 2013 through September 16, 2013. (Def. 56.1 Stmt. ¶ 15; *see also* Levine Decl. Ex. 10 at VA001580-82). The assigned EEOC Administrative Law Judge ("ALJ") ultimately dismissed this administrative proceeding after the parties reached a settlement. (Def. 56.1 Stmt. ¶¶ 17-18; *see also* Levine Decl. Ex. 11 at VA001956-57; Levine Decl. Ex. 12 at VA001577-78).

The issues raised in the First EEOC Complaint are not before the Court.

II.    Plaintiff's Reassignment, Misconduct, and the Second EEOC Complaint

Approximately one month after injuring himself with the folding table, in August 2013, Plaintiff accepted reassignment to a new position as a Peer Support Specialist. (Def. 56.1 Stmt. ¶ 13; *see also* Levine Decl. Ex 4 at VA000360-61). This position, as described by Plaintiff, was:

> a desk job. Counseling, working with vets, vets with depression issues, have former substance abuse issues and things of that nature, to try to get re-acclimated back into society. And also people that are in the psychiatric ward at the time, just being able to relate with them having shared interests.
>
> . . . .
>
> [P]eer support is more of a sedentary desk position, some computer work involved, making notes and entering them into the CPRS system. As opposed to the housekeeping job, which is manual labor, bending, lifting, squatting . . . .

(Levine Decl. Ex. 4 at VA000360-61).

On May 30, 2014, while serving as a Peer Support Specialist, a veteran in Plaintiff's care accused him of having a sexual relationship with her. (Levine Decl. Ex. 5 at VA000985-86; *see also* Def. 56.1 Stmt. ¶ 19; Levine Decl. Ex. 5 at VA000974-81). Plaintiff's then-supervisor, Dr. Iqbal Sheikh, notified him of the accusation three days later, on June 2, 2014. (Def. 56.1 Stmt. ¶ 20; *see also* Levine Decl. Ex. 5 at VA000962; Levine Decl. Ex. 6 at 58:11-59:14). On June 23,

2014, the Department convened an Administrative Investigation Board ("AIB") to investigate this sexual abuse allegation. (Def. 56.1 Stmt. ¶ 21; *see also* Levine Decl. Ex. 5 at VA000983-84; Levine Decl. Ex. 6 at 60:5-10). The AIB issued a report documenting its findings on August 7, 2014. (Def. 56.1 Stmt. ¶ 22; *see also* Levine Decl. Ex. 5 at VA000974-81). That report concluded, in pertinent part, that:

> CONCLUSION 1: An inappropriate relationship occurred between Mr. Voss and [the veteran] during the time period of March 19, 2014 through May 29, 2014, while [the veteran] was an outpatient at VA HVHCS and resident of Common Ground.
>
> . . . .
>
> CONCLUSION 2: Mr. Voss received position specific, in addition to general VA guidelines training, regarding ethical conduct and dual care relationships, yet failed to conduct himself in a professional manner and maintain high standards of personal conduct.
>
> . . . .
>
> CONCLUSION 3: [The veteran's] relationship with Mr. Voss was not therapeutic and [the veteran] exhibited an increase in anxiety and PTSD symptoms upon termination of the relationship.

(Levine Decl. Ex. 5 at VA000978-79; *see also* Def. 56.1 Stmt. ¶¶ 22-23). The AIB recommended, in line with these conclusions, *inter alia*:

> Recommendation 1: Appropriate administrative action is taken in regards to . . . Voss' violation of ethical conduct and code of ethics.
>
> Recommendation 2: Mr. Voss is decertified as a Peer Specialist by the granting agency, Depression Bipolar Substance Alliance (DBSA).

(Levine Decl. Ex. 5 at VA000980; *see also* Def. 56.1 Stmt. ¶ 24).

On October 10, 2014, two months after the AIB issued its report and recommendations, Dr. Susan Stabinsky ("Stabinsky") sent Plaintiff a letter advising him that the Department intended to terminate him for: (1) having an "[i]nappropriate relationship with a veteran;" and (2)

"[f]ail[ing] to comply with Medical Center Policy Number 00-3HV, Organizational Standards of Ethical Conduct." (Levine Decl. Ex. 5 at VA000994; *see also* Def. 56.1 Stmt. ¶ 25). Stabinsky advised, among other things, that Plaintiff could be "represented by an attorney or other representative . . . at all stages of this matter," that a "final decision to effect the action proposed has not been made," that, if removed, it would "be effective not less than 30 calendar days after the date of receipt of this notice," and that he would "be retained in active duty status" pending a final decision. (Levine Decl. Ex. 5 at VA000995). Stabinsky cautioned Plaintiff that he had "until the close of 14 calendar days from the date of receipt . . . to reply . . . ." (*Id*. at VA000994).

In September 2014, as the disciplinary proceeding moved forward, Plaintiff filed a second employment discrimination complaint. (Def. 56.1 Stmt. ¶ 56; *see also* Levine Decl. Ex. 16 at VA002069-72). The Second EEOC Complaint, EEOC No. 520-2015-00406X, initially claimed only that Plaintiff was reassigned pending investigation and denied a promotion because of the First EEOC Complaint. (Levine Decl. Ex. 16 at VA002069; *see also* Levine Decl. Ex. 18). The Second EEOC Complaint was later amended to address:

> [w]hether complainant was subjected to a hostile work environment based on reprisal for prior EEO activity as evidenced by the following events:
>
> 1. On June 2, 2014, Complainant was reassigned to another work area.
>
> 2. On August 1, 2014, Complainant was denied his career ladder promotion to GS-6.
>
> 3. On October 10, 2014, the Mental Health Care Line Manager, Susan Stabinsky, MD, issued [C]omplainant a proposed removal letter.

(Levine Decl. Ex. 17 at VA002094).

7

On November 30, 2015, the EEOC ALJ issued a decision based upon her review of the record without a hearing. (Levine Decl. Ex. 18 at VA001984-89). Granting summary judgment in favor of the Department, the EEOC ALJ observed:

> Complainant contends that since he was charged with having a sexual relationship with a patient, and that was not found to be the case, then he should not be in trouble. In essence, Complainant is arguing that he could not be found to have done anything less than what he was charged with. There is no reason to support this notion. An independent board found that Complainant had an inappropriate relationship with a patient, even if it was not sexual. In turn, management responded to the board's recommendations by issuing a proposed removal. There is simply no evidence of retaliation in this set of facts.
>
> Complainant argues that because he initiated prior EEOC activity a few months prior to this investigation, that he has essentially done enough to show a causal connection between the alleged harassment and his EEOC activity. This is not accurate. This argument completely ignores the significant intervening event, which is the allegation made by a female patient.

(*Id*. at VA001989). The Department issued its Final Agency Order, representing that it intended "to accept and fully implement the . . . decision of the EEOC administrative judge" on December 31, 2015. (Levine Decl. Ex. 19 at VA002253; *see also* Def. 56.1 Stmt. ¶ 58). The Final Agency Order was affirmed by the EEOC's Office of Federal Operations on June 16, 2017. (Def. 56.1 Stmt. ¶ 59; *see also* Levine Decl. Ex. 20 at VA002001-05).

The issues raised in the Second EEOC Complaint are not before the Court.

III.   <u>Plaintiff's Reassignment Pending a Final Decision and the Third EEOC Complaint</u>

Plaintiff responded to Stabinsky's letter on October 16, 2014. (Def. 56.1 Stmt. ¶ 26; Levine Decl. Ex. 5 at VA000996). Plaintiff wrote:

> Hi, I am in the process of looking for an attorney. I am requiring an extension of time to make the written and oral reply with regard to the proposed removal action.

> I am requesting an additional **30 days** within which to make replies
> in this matter. In the meantime, please send me all evidence on
> which the notice of the proposed action was based. I also need
> additional time to get statements from witnesses and to be able to
> have any attorney I retain to review all documents in preparation of
> a written reply and schedule for an oral reply meeting with respect
> to this matter.

(Levine Decl. Ex. 5 at VA000996 (emphasis in original)). On October 17, 2014, Russell granted

the request and extended Plaintiff's time to respond to November 17, 2014. (Def. 56.1 Stmt. ¶ 27;

*see also* Levine Decl. Ex. 5 at VA000997). Russell advised Plaintiff also that, "[p]ending a final

decision on your proposed removal you are being reassigned . . . as a Housekeeping Aid effective

October 19, 2014. Please report to Glenn Cook [("Cook")] on October 20, 2014 . . . at 7:00 a.m."

(Levine Decl. Ex. 5 at VA000997). Plaintiff acknowledged receipt of this reassignment on October

20, 2014, the day he was directed to report to Cook. (Def. 56.1 Stmt. ¶ 30; Levine Decl. Ex. 5 at

VA000997).

The following day, October 21, 2014, Plaintiff saw two doctors at Southern Westchester

Orthopedics and secured a letter from each. (Def. 56.1 Stmt. ¶¶ 31-22; *see also* Levine Decl. Ex.

5 at VA001032-33; Levine Decl. Ex. 6 at 71:8-72:25). One letter, written by Dr. Eric Rosenbaum,

stated that Plaintiff had received care for "LOW BACK DERANGEMENT" and that Plaintiff

could return to "FULL TIME, LIGHT DUTY" on October 22, 2014. (Levine Decl. Ex. 5 at

VA001032). The other letter, written by Dr. Eric Spencer, indicated that Plaintiff was unable to

perform the duties of his "usual job" and that he could not "do any heavy lifting, bending,

squatting, push or pulling." (Levine Decl. Ex. 5 at VA001033). That letter noted a fifteen-pound

limitation for lifting and a ten-pound limitation for pushing or pulling. (*Id.*). Plaintiff left these

letters with Russell's assistant on October 21, 2014 or October 22, 2014. (Def. 56.1 Stmt. ¶ 33;

*see also* Levine Ex. 4 at VA000446-47).

On October 24, 2014, Plaintiff met with Fullerton, Russell, Kristan Murray, Assistant Chief of the Department's Human Resources Management Service in Montrose, and Dale C. Kutzbach ("Kutzbach"), an attorney representing the Department. (Def. 56.1 Stmt. ¶ 34; 56.1 Stmt. Opp. ¶ 34; *see also* Levine Decl. Ex. 4 at VA000446-47, VA000503; Levine Decl. Ex. 6 at 75:24-76:9, 143:21-24; Levine Decl. Ex. 13 at VA002302). Early that afternoon, Kutzbach sent Plaintiff an e-mail documenting the content of, and conclusions reached during, the meeting as follows:

> Effective Monday October 27, 2014, you will be expected to report . . . at 7:00 a.m. Per the memo that you received this past Monday, you are to report to Glenn Cook . . . . If you desire leave, as per our conversation today, you must request it from your supervisor, Glenn Cook. As you were advised today, you have no current worker's comp claim pending and are not entitled to restricted duty. You were also advised by . . . Fullerton what your options are in terms of filing for workers comp. At the conclusion our meeting, **you advised us that you didn't want . . . Fullerton to do anything until you thought about it further.** Your claim at our meeting was that you were currently suffering from sciatica. Finally, **you were informed that you could put in for FMLA, request a reasonable accommodation or put in for worker's comp if you deem is appropriate.**
>
> If you have any further requestions regarding anything, please feel free to contact me at ext. 2736.

(Levine Decl. Ex. 13 at VA002302 (emphasis added)). Plaintiff did not request FMLA leave, workers' compensation, or a reasonable accommodation in accordance with the Department's procedures after the October 24, 2014 meeting. (Def. 56.1 Stmt. ¶¶ 36-39; *see also* Levine Decl. Ex. 6 at 82:5-83:2; Levine Decl. Ex. 14 at VA002462-64).[5]

On October 28, 2014, Plaintiff reported to Cook for the first day of his reassignment as a Housekeeping Aid. (Def. 56.1 Stmt. ¶ 41; *see also* Levine Decl. Ex. 4 at VA000375; Levine Decl. Ex. 6 at 83:7-84:10). After changing into his uniform, Cook showed Plaintiff to his new work area

---

[5] Plaintiff insists that he never received the e-mail but concedes that its contents reflected the outcome of the October 24, 2021 meeting. (Pl. Aff. ¶¶ 29-30).

and introduced him to colleagues in the vicinity. (Def. 56.1 Stmt. ¶¶ 44-45; *see also* Levine Decl. Ex. 4 at VA000375-77, VA000513-15; Levine Decl. Ex. 5 at VA000932; Levine Decl. Ex. 6 at 119:20-120:8, 125:6-14). Cook also showed Plaintiff where the cleaning equipment was located and explained the duties associated with the new assignment. (Def. 56.1 Stmt. ¶ 46; *see also* Levine Decl. Ex. 5 at VA000931; Levine Decl. Ex. 6 at 123:11-24, 124:15-125:1). Plaintiff hurt his shoulder while operating a mop bucket shortly after beginning his new position. (Def. 56.1 Stmt. ¶ 47; *see also* Levine Decl. Ex. 4 at VA000517; Levine Decl. Ex. 6 at 90:14-91:25). Later that same day, Plaintiff filed for Federal Continuation of Pay ("COP") benefits. (Def. 56.1 Stmt. ¶ 48; Levine Decl. Ex. 4 at VA000385). The next day, October 29, 2014, Plaintiff filed for FECA benefits. (Def. 56.1 Stmt. ¶ 49; *see also* Levine Decl. Ex. 15 at DOL_01683).

Approximately one week later, on November 7, 2014, Fullerton notified Plaintiff by letter that his COP benefits would be terminated as of November 4, 2014 because: (1) Plaintiff failed to submit paperwork required under 20 C.F.R. § 10.222; and (2) the record available did "not indicate disability for regular duty." (Levine Decl. Ex 5 at VA001037; *see also* Def. 56.1 Stmt. ¶ 50.[6] In a parallel fashion, by letter dated November 10, 2014, the United States Department of Labor's Office of Worker's Compensation Programs ("OWCP") informed Plaintiff that the documentation supporting his FECA benefits claim was insufficient. (Def. 56.1 Stmt. ¶ 52; *see also* Levine Decl. Ex. 15 at DOL_01683-86). A little more than one month later, on December 19, 2014—after Plaintiff supplemented his submission—the OWCP accepted his FECA benefits claim. (Def. 56.1 Stmt. ¶ 54; *see also* Levine Decl. Ex. 5 at VA001043-44). Plaintiff has received FECA benefits since that date. (Def. 56.1 Stmt. ¶ 55; *see also* Levine Decl. Ex. 6 at 171:12-18).

---

[6] Notably, the Attending Physician's Report submitted in support of Plaintiff's claim for COP benefits was not completed until ten days later, November 17, 2014. (Def. 56.1 Stmt. ¶ 53; *see also* Levine Decl. Ex. 4 at VA000464-65; Levine Decl. Ex. 5 at VA001042).

These events resulted in a third discrimination complaint, filed in February 2015. (Def. 56.1 Stmt. ¶ 60; *see also* Levine Decl. Ex. 5 at VA000852-56). Plaintiff, in the Third EEOC Complaint, EEOC No. 520-2016-00044X, alleged that he was:

> subjected to a hostile work environment based on disability and in reprisal for prior EEO activity as evidenced by the following events:
>
> 1. On October 28, 2014, Housekeeping Supervisor, Glen Cook (GC) berated complainant as he assisted complainant in preparing complainant for his new duty assignment in GC's area.
>
> 2. On October 28, 2014, complainant was required to perform duties which were outside his scope of medical limitations.
>
> 3. On October 28, 2014, the agency failed to accommodate complainant.
>
> 4. On November 7, 2014, complainant became aware that the agency terminated complainant's Continuation of Pay (COP) effective November 4, 2014.

(Levine Decl. Ex. 5 at VA000852; *see also* Levine Decl. Ex. 21 at VA000786-806).

The Third EEOC Complaint resulted in an Interim Decision dated May 16, 2017 wherein the EEOC ALJ found that while the Department failed to reasonably accommodate Plaintiff on October 28, 2014, there was no evidence as to any other discrimination. (Def. 56.1 Stmt. ¶ 61; *see also* Levine Decl. Ex. 21 at VA000790-806). That EEOC ALJ awarded Plaintiff $70,000 in compensatory damages "primarily in light of the fact that Complainant suffered a significant shoulder injury while working as a janitor that has required two shoulder surgeries and continues to cause him pain." (Levine Decl. Ex. 21 at VA000790-91; *see also* Def. 56.1 Stmt. ¶ 61). On July 12, 2017, another EEOC ALJ entered a separate Order awarding Plaintiff $15,300 in attorney's fees. (Def. 56.1 Stmt. ¶ 62; *see also* Levine Decl. Ex. 21 at VA000786-89).

The Department issued its Final Agency Order on August 17, 2017. (Def. 56.1 Stmt. ¶ 63; *see also* Levine Decl. Ex. 22 at VA000746-52). The Department, in that Order, "accept[ed] the EEOC administrative judges' decisions in their entirety and . . . implement[ed] them." (Levine Decl. Ex. 22 at VA000747). The Department paid $70,000 in compensatory damages to Plaintiff and $15,300 in attorney's fees to Plaintiff's counsel. (Def. 56.1 Stmt. ¶¶ 64-65; *see also* Levine Decl. Ex. 6 at 163:15-164:10). With the Complaint herein, Plaintiff appeals the Department's Final Agency Order of August 17, 2017. (Def. 56.1 Stmt. ¶ 66; *see also* Compl.).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*,

248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is

appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

## ANALYSIS

When a federal employee alleges employment discrimination on the basis of a disability, as is the case here, "Section 501 of the Rehabilitation Act provides the exclusive route" for pursuing those claims. *Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (quoting *Carby v. Holder*, No. 11-CV-05775, 2013 WL 3481722, at *8 n.9 (S.D.N.Y. July 10, 2013)); *see also Wein v. New York City Dep't of Educ.*, No. 18-CV-11141, 2020 WL 4903997, at *12 (S.D.N.Y. Aug. 19, 2020) (observing that the Rehabilitation Act is "the exclusive route by which federal employees may raise claims of disability discrimination against the federal government"). The Rehabilitation Act provides, among other things, that:

> The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(k) (42 U.S.C. 2000e-5(f) through (k)) . . . shall be available, with respect to any complaint under section 791 of this title [*i.e.*, Section 501 of the Rehabilitation Act], to any employee . . . aggrieved by the final disposition of such complaint . . . .

29 U.S.C. § 794a(a)(1). Section 717 of the Civil Rights Act of 1964, in turn, instructs:

> [A]n employee . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c); *see also* 42 U.S.C. § 2000e-5(g)(1) (providing that "[i]f the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate . . . ."); 42 U.S.C. § 1981a(a)(2).

When a party invokes his right to file a civil action under 42 U.S.C. § 2000e-16(c), the *entire* disposition—not just those specific determinations with which Plaintiff takes umbrage—is reviewed by the Court *de novo*. *See McDonald v. Gonzales*, No. 05-CV-00055, 2007 WL 951445, at *7 (N.D.N.Y. Mar. 27, 2007) ("To the extent that Plaintiff now seeks review of *only* the remedial portions of the EEOC's final determination, the claim is barred." (emphasis in original)); *St. John v. Potter*, 299 F. Supp. 2d 125, 128 (E.D.N.Y. 2004) ("A plaintiff bringing a civil action pursuant to 42 U.S.C. § 2000e-16(c) is entitled to a trial *de novo* and is not entitled to litigate those portions of an EEOC decision believed to be wrong, while at the same time binding the government on those issues resolved in his or her favor." (internal quotation marks omitted)); *see also Scott v. Johanns*, 409 F.3d 466, 471-72 (D.C. Cir. 2005) ("[F]ederal employees who secure a final administrative disposition finding discrimination and ordering relief have a choice: they may either accept the disposition and its award, or file a civil action, trying *de novo* both liability and remedy. They may not, however, seek *de novo* review of just the remedial award . . . .").

Plaintiff, by filing this action, placed at issue the Final Agency Order associated with his Third EEOC Complaint. (Compl. ¶ 1; Opp. Br. at 11-14). As such, the Court evaluates the four alleged acts of discrimination underlying that specific proceeding (*i.e.*, Plaintiff's reassignment, his interactions with Cook, the failure to accommodate him, and the termination of his COP benefits (Levine Decl. Ex. 5 at VA000852)) in the context of the five claims for relief Plaintiff identifies in the Complaint to assess whether liability exists. Those claims for relief are: (1) "Disability Disparate Treatment;" (2) "Reasonable Accommodation;" (3) "Retaliatory Disparate Treatment;" (4) "Retaliatory Harassment;" and (5) "Disability Harassment." (Compl. ¶ 41).

I.   Claims of Disability Discrimination Under the Rehabilitation Act

A disability discrimination claim under the Rehabilitation Act "may be based on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Cheung v. Donahoe*, No. 11-CV-0122, 2016 WL 3640683, at *5 (E.D.N.Y. June 29, 2016) (quoting *Lupe v. Shinseki*, No. 10-CV-00198, 2012 WL 3685954, at *7 (N.D.N.Y. Aug. 24, 2012)). Under this first category of discrimination claims, the parties agree that only intentional discrimination and failure to accommodate are at issue here. (*Compare* Def. Br. at 11, *with* Opp. Br. at 16; *see also* Compl. ¶ 41).

A.   Intentional Discrimination (Disparate Treatment)

Claims of intentional discrimination pressed under the "Rehabilitation Act are analyzed pursuant to the burden-shifting framework described in *McDonell-Douglas*." *Kleyman v. SUNY Downstate Med. Ctr.*, No. 18-CV-03137, 2020 WL 5645218, at *14 (E.D.N.Y. Sept. 21, 2020) (quoting *Kho v. New York & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 717 (S.D.N.Y. 2018)). The general contours of that burden-shifting framework are as follows:

> To survive summary judgment on a claim related to an adverse employment action, a plaintiff must first establish a *prima facie* claim of discrimination. Once a plaintiff establishes such a case, a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors and the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment. If the employer offers such a legitimate reason, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination.

*Id*. (internal citations and quotation marks omitted). Defendant maintains that he is entitled to summary judgment on this theory of discrimination because: (1) Plaintiff cannot establish a *prima facie* claim of discrimination in the first instance; and (2) in any event, Plaintiff cannot raise a genuine issue of material fact that Defendant's legitimate, non-discriminatory reasons were a

pretext for discrimination. (Def. Br. at 16-20). Plaintiff, in contrast, insists that he is entitled to summary judgment because he "was treated with the deepest disfavor, and thus, in a fashion that was surely discriminatory . . . ." (Opp. Br. at 16).

"To establish a *prima facie* case of discrimination under the [Rehabilitation Act], Plaintiff must demonstrate that (i) [his] employer is subject to the [Rehabilitation Act], (ii) Plaintiff is a disabled person as defined by the [Rehabilitation Act], (iii) Plaintiff is otherwise qualified for the position (meaning that [he] could perform the essential functions of [his] job with or without reasonable accommodation), and (iv) Plaintiff suffered an adverse employment action because of [his] disability." *Edwards v. Wilkie*, No. 16-CV-08031, 2020 WL 2792997, at *9 (S.D.N.Y. May 29, 2020) (internal quotation marks omitted); *see also Lee v. Saul*, No. 19-CV-06553, 2020 WL 5836513, at *5 (S.D.N.Y. Sept. 30, 2020); *Cheung*, 2016 WL 3640683, at *5 (same). Three of the four incidents underly this theory: (1) Cook's behavior; (2) Plaintiff's reassignment; and (3) termination of the COP benefits.[7]

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. Examples . . . include termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *O'Kane v. Lew*, No. 10-CV-05325, 2013 WL 6096775, at *7 (E.D.N.Y. Nov. 20, 2013) (first alteration added, internal citations and quotation marks omitted). Although there is "no exhaustive list of what constitutes an adverse employment action," *Collins v. Potter*, No. 03-CV-03474, 2008 WL 4104459, at *4 (E.D.N.Y. Aug. 29, 2008) (internal quotation marks omitted), precedent instructs unquestionably that embarrassment does not suffice. *See Pierre v.*

---

[7] As the parties recognized, failure to provide a reasonable accommodation is a separate theory of discrimination. (*See* Def. Br. at 11; Opp. Br. at 15).

*Napolitano*, 958 F. Supp. 2d 461, 481 (S.D.N.Y. 2013) ("[M]erely being humiliated does not, without more, constitute an adverse employment action."); *cf. Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 427 (E.D.N.Y. 2014) (noting that a "bruised ego" is "insufficient to constitute a tangible or material adverse employment action"); *Valenti v. Massapequa Union Free Sch. Dist.*, No. 09-CV-00977, 2012 WL 1038811, at *13 (E.D.N.Y. Mar. 28, 2012) (observing that simply feeling "humiliated" was not an adverse employment action).[8] Any claim for intentional discrimination based on Cook's behavior is, consequently, dismissed.

As to the remaining incidents—reassignment and the termination of COP benefits—Plaintiff fails to raise a genuine issue of material fact linking them to his claimed disability.

With respect to his reassignment, it is undisputed that when Russell directed Plaintiff's temporary reassignment as a Housekeeping Aid before the October 24, 2014 meeting, she was unaware of any medical issues that would have prevented him from accepting the reassignment at that time. (*Compare* Def. 56.1 Stmt. ¶ 29, *with* Opp. 56.1 Stmt. ¶ 29); *see Lopez v. MNAF Pizzeria, Inc.*, No. 18-CV-06033, 2021 WL 1164336, at *3 n.5 (S.D.N.Y. Mar. 25, 2021) (deeming admitted those facts listed in the 56.1 Statement that were not properly opposed); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (explaining that "responses that do not point to any evidence in the record . . . do not function as denials, and will be deemed admissions of the stated fact" (internal quotation marks omitted)). Indeed, if Russell was unaware of Plaintiff's medical issues, it follows naturally that she could not have reassigned him *because of* his purported disability. *See Raytheon Co. v Hernandez*, 540 U.S. 44, 54 n.7 (2003) (observing that if an employer "were truly

---

[8] Plaintiff's failure to respond to Defendant's argument that Cook's behavior was not an adverse employment action (*compare* Def. Br. at 17, *with* Opp. Br.) provides a separate, independent basis for granting Defendant's motion that the Court adopts. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

unaware that such a disability existed, it would be impossible for her . . . decision to have been based, even in part, on . . . disability").

As for the termination of COP benefits, two issues rally in favor of granting the motion. First, Plaintiff failed to respond to this argument. (*Compare* Def. Br. at 18, *with* Opp. Br.). The Court therefore deems the claim for intentional discrimination abandoned vis-à-vis the termination of COP benefits. *See Jackson*, 766 F.3d 189 at 198. Second, the only link between the termination of COP benefits and Plaintiff's disability in the record is Plaintiff's insistence that the issues are connected because they were terminated early. (*See* Levine Decl. Ex. 6 at 134:20-137:7; Pl. Aff. 39). This factually unsubstantiated argument cannot withstand Defendant's motion for summary judgment. *See, e.g.*, *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn."); *Hawkins v. Astor Home for Child.*, No. 96-CV-08778, 1998 WL 142134, at *7 (S.D.N.Y. Mar. 25, 1998) (Sotomayor, J.) ("Hawkins has no evidence pointing towards . . . discrimination, and the procedural irregularities do not do so by themselves.").

Based upon the foregoing, Plaintiff failed to raise a genuine issue of material fact in opposition to Defendant's motion with respect to his intentional discrimination claim under the Rehabilitation Act. Defendant's motion is, therefore, granted as to this claim for relief. Plaintiff's motion is denied.

B.  Failure to Reasonably Accommodate a Disability

Plaintiff's second theory of discrimination under the Rehabilitation Act is that Defendant failed to accommodate him on October 28, 2014. "To establish a *prima facie* case of discrimination under the Rehabilitation Act based on an employer's failure to accommodate a disability, a plaintiff

must demonstrate that '(1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019)). On this theory, Defendant argues that Plaintiff can establish neither that: (1) he could perform the essential functions of his position with an accommodation; nor (2) he was denied a reasonable accommodation. (Def. Br. at 11-16). Plaintiff sought summary judgment on this claim as well, arguing that the facts prove that he requested—and was denied—a reasonable accommodation. (Opp. Br. at 17).

### 1. Failure to Establish Qualification with a Reasonable Accommodation

"[P]laintiff bears the burden of production and persuasion on the issue of whether [he] is qualified for the job in question." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137 (2d Cir. 1995). This burden includes also establishing "the existence, at or around the time when accommodation was sought, of an existing vacant position to which [he] could have been reassigned." *Pardo v. Nielsen*, No. 19-CV-00616, 2021 WL 1143897, at *9 (S.D.N.Y. Mar. 24, 2021) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97-98 (2d Cir. 2009) (alteration in original)). A successful showing requires more than Plaintiff's insistence that an accommodation "must" or "should" exist. *See Hodges v. Holder*, 547 F. App'x 6, 8 (2d Cir. 2013) (affirming that the plaintiff failed "to raise a genuine issue as to whether there was a vacant position that he was qualified for and to which he could have been assigned"); *Jackan v. New York State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000) ("The burden of persuasion on the existence of an effective accommodation is not satisfied by mere speculation." (internal quotation marks

omitted)). On this question, Plaintiff maintains that instead of being reassigned pending a final decision on his employment, he could have instead: (1) been permitted to remain in his position as a Peer Support Specialist; or (2) been reassigned to "some other" position. (Opp. Br. at 17).

As to the contention that Plaintiff should have been allowed to remain a Peer Support Specialist pending a decision on his termination, that argument seems to stem from the statement in Stabinsky's October 10, 2014 letter that Plaintiff would "be retained in active duty status . . . and continue in [his] administrative detail." (Levine Decl. Ex. 5 at VA000995; *see also* Opp. Br. at 17 (arguing that "he was denied participation in a position . . . the very one promised in the Proposal")). Notwithstanding this statement, Plaintiff cites absolutely no precedent to support his argument. (*See* Opp. Br. at 17). The AIB concluded that Plaintiff violated Department policy by engaging in an inappropriate relationship with a veteran under his care and recommended that Plaintiff be decertified as a Peer Support Specialist. (Def. 56.1 Stmt. ¶¶ 21-24; Levine Decl. Ex. 5 at VA000974-81). Precedent simply does not support the idea that Defendant—when intending to terminate Plaintiff following an independent board's adjudication that he violated the trust inherent in his position and took advantage of a vulnerable veteran under his care—is required to keep Plaintiff in that position as a reasonable accommodation. *See Francis v. Runyon*, 928 F. Supp. 195, 205 (E.D.N.Y. 1996) (explaining that "[a] disabled individual cannot be otherwise qualified for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the statute" (internal quotation marks omitted)); *cf. Krasner v. City of New York*, No. 11-CV-02048, 2013 WL 5338558, at *12 (S.D.N.Y. Sept. 23, 2013) (granting defendants' motion for summary judgment on disability discrimination claim and noting that "the law does not require an employer to tolerate misconduct simply because an employee is suffering from a disability").

As for Plaintiff's alternative theory, that he should have at least been reassigned to some unspecified position, it fails for two separate reasons. First, Plaintiff did not properly oppose by citation to facts in the record—and therefore admitted—that Russell searched for other positions but was unable to locate any other for which Plaintiff was qualified. (*Compare* Def. 56.1 Stmt. ¶ 28, *with* Opp. 56.1 Stmt. ¶ 28); *see Lopez*, 2021 WL 1164336, at *3 n.5; *Baity*, 51 F. Supp. 3d at 418. Second, this argument amounts to nothing more than rank speculation insufficient to oppose a motion for summary judgment. *See Holder*, 547 F. App'x at 8; *Jackan*, 205 F.3d at 566.

In sum, Plaintiff failed to carry his burden of production and persuasion of establishing that, with a reasonable accommodation that was available, he could have performed the essential functions of his position. Defendant is, accordingly, entitled to summary judgment on Plaintiff's reasonable accommodation claim under the Rehabilitation Act on this point alone. To the extent Plaintiff sought summary judgment on this theory, it is denied.

### 2. Breakdown of the Interactive Process

Assuming *arguendo* that Plaintiff made a factual showing sufficient to defeat Defendant's motion on all other points, the motion would still be granted because the evidence reveals—as Defendant argues (Def. Br. at 15-16)—that even if Plaintiff did request a reasonable accommodation, he abandoned the interactive process.

Under the Rehabilitation Act, "[g]enerally, 'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" *Atencio v. United States Postal Serv.*, 198 F. Supp. 3d 340, 357 (S.D.N.Y. 2016) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)). Accordingly, "[a] defendant is not liable for failure to provide a reasonable accommodation . . . if the plaintiff does not ask for an accommodation, or fails to provide information necessary to assess the request for an accommodation." *Khalil v. Pratt Inst.*,

No. 16-CV-06731, 2019 WL 1052195, at *7 (E.D.N.Y. Feb. 13, 2019) (quoting *Grabin v. Marymount Manhattan Coll.*, No. 12-CV-03591, 2014 WL 2592416, at *14 (S.D.N.Y. June 10, 2014) (second alteration in original)), *adopted by* 2019 WL 1046248 (E.D.N.Y. Mar. 4, 2019). Notwithstanding this limitation:

> where the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled, the employer is obligated to engage in an interactive process with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated. To trigger the duty to engage the interactive accommodations process, the employer must have known, or have had sufficient notice such that the employer reasonably should have known, that the employee has a disability within the meaning of the Act, as opposed to a mere impairment.

*Costabile*, 951 F.3d at 81 (internal citations and quotation marks omitted); *see also Daly v. Westchester Cty. Bd. of Legislators*, No. 19-CV-04642, 2021 WL 229672, at *8 (S.D.N.Y. Jan. 22, 2021) (explaining that requesting a reasonable accommodation under the Rehabilitation Act is not about "formalisms" but whether the requestee "can be fairly said to both know of the disability and the desire for an accommodation" (internal quotation marks omitted)).

Still, even if an employer is on notice of an employee's disability, there are two caveats pertinent to this particular set of facts.

First, "an employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed . . . ." *McElwee v. Cty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012). This point has been discussed already; Plaintiff has not raised a genuine issue of material fact supporting the notion that a reasonable accommodation existed on October 28, 2014. (*See* discussion *supra*). Dismissing this claim for relief is therefore proper on that basis alone. Second, notwithstanding Plaintiff's failure to identify a viable accommodation, the interactive process is a two-way street and "[a]n employee who is

responsible for the breakdown of the interactive process may not recover for a failure to accommodate." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 794 (S.D.N.Y. 2020) (quoting *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945-46 (2d Cir. 2008) (alteration in original)).

Plaintiff does not respond to Defendant's argument that he abandoned the interactive process. (*See generally* Opp. Br.). The Court, therefore, deems the point abandoned and grants Defendant's motion on this basis. *See Jackson*, 766 F.3d 189 at 198. However, even if Plaintiff had not abandoned the issue, summary judgment would still be proper on these facts. The record is clear that Plaintiff was advised during and after the October 24, 2014 meeting that he "could put in for FMLA, request a reasonable accommodation or put in for worker's comp," as Plaintiff thought appropriate. (Levine Decl. Ex. 13 at VA002302; *see also* Pl. Aff. ¶¶ 29 ("The results of the October 24 Meeting were . . . confirmed by Mr. Kutzbach's email of that date . . . ."). Despite this invitation to request a reasonable accommodation (or, perhaps, continue the interactive process), Plaintiff failed to do so and reported for his assignment on October 28, 2014. (Def. 56.1 Stmt. ¶¶ 36-39, 41; Levine Decl. Ex. 4 at VA000375; Levine Decl. Ex. 6 at 82:5-84:10; Levine Decl. Ex. 14 at VA002462-64).

On these facts, to the extent the interactive process was triggered, Plaintiff abandoned it and he cannot now state a claim for failing to be reasonably accommodated. *See Economou v. Caldera*, No. 99-CV-12117, 2000 WL 1844773, at *24 (S.D.N.Y. Dec. 18, 2000) (granting the defendant's motion for summary judgment because the plaintiff "was responsible for a breakdown in the interactive process"); *see also Durick v. New York City Dep't of Educ.*, 202 F. Supp. 3d 277, 290 (E.D.N.Y. 2016) ("Plaintiff cannot unreasonably discontinue a process through which she could have been accommodated and then use the abandoned request as the basis for a failure to

accommodate claim."); *Elmessaoudi v. Mark 2 Rest. LLC*, No. 14-CV-04560, 2016 WL 4992582, at *8 (S.D.N.Y. Sept. 15, 2016) ("[A]ny . . . inadequacy is attributable to Plaintiff's failure to make reasonable efforts to help [the employer] determine what specific accommodations [were] necessary." (first alteration added)); *Julius v. Dep't of Hum. Res. Admin.*, No. 08-CV-03091, 2010 WL 1253163, at *11 (S.D.N.Y. Mar. 24, 2010) (concluding that the plaintiff was responsible for the collapse of the interactive process because the record presented no evidence of "follow-up action by the plaintiff").

In short, the record belies any claim that a reasonable accommodation existed, and, even if it did and Plaintiff requested it, he abandoned the interactive process and cannot now complain about Defendant's failure to follow through with that process. Defendant's motion for summary judgment on this claim for relief is, consequently, granted; Plaintiff's motion is, correspondingly, denied.

II.   Claims of Retaliation Under the Rehabilitation Act

In the second category of claims, Plaintiff also insists that he was subjected to "Retaliatory Disparate Treatment" and "Retaliatory Harassment" under the Rehabilitation Act.

A.   Retaliatory Disparate Treatment

A retaliation claim under the Rehabilitation Act requires a showing that: "(i) a plaintiff was engaged in a protected activity; (ii) the alleged retaliator knew that plaintiff was engaged in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)). Retaliation claims under the Rehabilitation Act, like claims for intentional discrimination, are

subject to the familiar three-step burden shifting framework. *Atencio*, 198 F. Supp. 3d at 361 (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

The protected activity at issue here was Plaintiff's filing the Second EEOC Complaint—the one from September 2014—complaining that he was subjected to a hostile work environment for filing his First EEOC Complaint. (Opp. Br. at 18-19; *see also* Compl. ¶ 47(a)). This action certainly qualifies as a protected activity (*i.e.*, an "action taken to protest or oppose statutorily prohibited discrimination"). *Natofsky*, 921 F.3d at 354 (internal quotation marks omitted).[9] Assuming without deciding that Plaintiff stated a *prima facie* case for retaliation, Defendant met his burden of offering legitimate, non-discriminatory reasons for his conduct. Namely, Defendant explained that the reassignment resulted from Plaintiff's misconduct and that the termination of COP benefits was caused by insufficient paperwork. (*See* Levine Decl. Ex. 4 at VA000486-87 (explaining that Plaintiff "was being reassigned due to a patient incident and ethical conduct in the position that he held"); Levine Decl. Ex. 5 at VA000978-80 (the conclusions and recommendations of the AIB's report), VA001037 (letter from Fullerton advising that COP benefits would be terminated because of insufficient documentation)). The hurdle Plaintiff has not surmounted is establishing a genuine issue of material fact that these legitimate, non-discriminatory reasons are, in actuality, a pretext for discrimination.

---

[9] The Complaint suggests that the alleged retaliatory conduct could also have been based on Plaintiff's request to retain an attorney regarding the Second EEOC Complaint. (Compl. ¶¶ 28, 30, 47(c)). These allegations are belied by the evidence. Plaintiff's October 16, 2014 letter, entitled "Request Extension to Reply to Adverse Action," makes clear that Plaintiff sought an attorney to represent him with respect to the "Proposed Removal." (Levine Decl. Ex. 5 at VA000996; *see also* Pl. Aff. ¶¶ 21, 24). While Plaintiff does not reference this point in his opposition brief—and Defendant does so only in a footnote—for the avoidance of doubt, retention of counsel on these facts does not constitute a protected activity because it is clear that Plaintiff intended to secure counsel to represent him in the disciplinary proceeding, not to protest prohibited discrimination. *Cf. Klaes v. Jamestown Bd. of Pub. Utilities*, No. 11-CV-00606, 2013 WL 1337188, at *10 (W.D.N.Y. Mar. 29, 2013) (explaining that the "retention of counsel at the time [the plaintiff] was served with disciplinary charges . . . cannot serve as protected activity to support his *prima facie* case" of retaliation).

Plaintiff's testimony reveals that his basis for attributing the action to the Second EEOC

Complaint is based on nothing more than his *belief* that the events *must be* causally connected:

**Q. What is your basis to claim that the VA put you in the housekeeping role on October 28, 2014 due to your prior EEO activity?**

A. I viewed it as retaliation.

**Q. I'm asking why.**

A. Because I had prior EEO activity and that's normally the practice of Montrose VA.

**Q. Aside from the fact that you did have prior EEO activity, is there anything else sitting here today that you know of that serves as the basis of your claim that the VA put you in the housekeeping role on October 28, 2014 due to your prior EEO activities?**

A. If I have any - -

**Q. Is there anything sitting here today that you can think of that supports your view that the VA put you in the housekeeping role on October 28, 2014 as a result of your prior EEO activity?**

A. I know it to be a fact, but no.

**Q. You said not.**

A. I said I know it to be a fact, but no.

. . . .

**Q. What is your basis to claim that your COP was terminated prematurely in retaliation for your prior EEO activity?**

A. Because as the rule states, if nothing else, I get at least ten business days or ten calendar days, and I got neither. I didn't get to ten . . . days . . . before my COP was terminated. Once your COP is terminated, you no longer get paid. If you can't get paid, then you can't pay your bills. If you can't pay your bills - - if you're not really hurt, then you have to work because you need money.

**Q. I'm asking you - - I understand we looked at Ms. Fullerton's note. Aside from the fact of her note, what is the basis that the note was due to your prior EEO activity?**

> A. What other reason could it be? If it was terminated prematurely -
> - why would it be terminated prematurely other than that?
>
> **Q. Do you have any basis aside from what you've stated here
> today that you believe it was retaliation?**
>
> A. No. Just the act itself.

(Levine Decl. Ex. 6 at 159:22-160:17, 162:17-163:14 (emphasis in original); *see also* Pl. Aff. ¶¶ 24, 34-35).

Plaintiff doubled down on this theory in his opposition brief, complaining generally that the proximity between the events of which he complains and the Second EEOC Complaint is sufficient to establish causation because "there can be no more blatant set of retaliatory events." (Opp. Br. at 19). Phrased more simply, Plaintiff says pretext exists because of the temporal proximity between events. This argument cannot prevail at summary judgment. *See Gilani v. Teneo, Inc.*, No. 20-CV-01785, 2021 WL 3501330, at *17 (S.D.N.Y. Aug. 4, 2021) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013)); *Estevez v. Berkeley Coll.*, No. 18-CV-10350, 2021 WL 3115452, at *20 (S.D.N.Y. July 19, 2021) (same); *see also Jagmohan v. Long Island R. Co.*, No. 12-CV-03146, 2014 WL 4417745, at *15 (E.D.N.Y. Sept. 8, 2014) ("Accordingly, because the record demonstrates that, apart from his speculative suspicions, plaintiff cannot link the adverse employment actions to any retaliatory motivation, the Court grants defendants' motion for summary judgment . . . ."), *aff'd*, 622 F. App'x 61 (2d Cir. 2015).

Plaintiff, in order to survive Defendant's motion and/or prevail on his own motion, was required, at least, to present tangible, admissible evidence raising a genuine issue of material fact linking the adverse actions to his protected activity. By relying purely on temporal proximity and his opinion that the connection exists, he failed to make this showing. As the Second Circuit has warned, while "a court is required to resolve all ambiguities and draw all factual inferences in

favor of the nonmovant, a plaintiff may not survive summary judgment merely by conjuring a hypothetical issue of material fact." *Robinson v. Concerta Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted). That is precisely what Plaintiff sought to do here.

Defendant's motion is granted and the Rehabilitation Act retaliation claim is dismissed. Plaintiff's motion for summary judgment is denied.

B.   Retaliatory Harassment

Plaintiff's claim for "Retaliatory Harassment" is not a separate claim for relief unto itself. Rather, it presents a paradigm through which the creation of a hostile work environment—in response to a protected activity—constitutes an adverse employment action within the structure of a retaliation claim. As explained by one court in the Title VII context:

> To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting [discriminatory] activity . . . a plaintiff must satisfy the same standard that governs hostile workplace[10] claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of . . . employment.

*Hahn v. Bank of Am. Inc.*, No. 12-CV-04151, 2014 WL 1285421, at *22 (S.D.N.Y. Mar. 31, 2014) (quoting *Rasco v. BT Radianz*, No. 05-CV-07147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009)), *aff'd sub nom. Hahn v. Bank of Am. N.A.*, 607 F. App'x 55 (2d Cir. 2015); *see also Roelcke v. Zip Aviation, LCC*, No. 15-CV-06284, 2018 WL 1792374, at *8 n.3 (S.D.N.Y. Mar. 26, 2018) ("Courts in the Second Circuit have recognized retaliatory harassment as an adverse employment action, depending on its severity and causation.").

The analysis here is simple and in-line with the analysis governing the retaliation claim: even if Plaintiff raised a genuine issue of material fact as to whether he endured a hostile work

---

[10] The standard for establishing a hostile work environment claim is discussed *infra*.

environment by operation of these incidents—and, as discussed below, he has not done so—his retaliation claim is still stymied by the failure to establish causation. (*See* discussion *supra*).

III.   <u>Harassment Under the Rehabilitation Act</u>

The third and final category of claims asserts one for "Disability Harassment," more commonly referred to as "hostile work environment." A hostile work environment claim under the Rehabilitation Act requires that Plaintiff establish: "(1) a workplace that is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered and (2) a specific basis for imputing the challenged conduct to the employer." *Miller v. McHugh*, No. 14-CV-05026, 2016 WL 698147, at *3 (S.D.N.Y. Feb. 19, 2016) (quoting *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 (2d Cir. 2014)). The harassing conduct must, of course, be linked to the "protected class," *id.* (internal quotation marks omitted), and it "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Modica v. New York City Dep't of Educ.*, No. 20-CV-04834, 2021 WL 3408587, at *7 (S.D.N.Y. Aug. 4, 2021) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). Moreover, while a single severe incident may suffice, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2020 WL 2836760, at *13 (S.D.N.Y. May 31, 2020) (internal quotation marks omitted). The focus is the totality of the circumstances. *Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist.*, 808 F. App'x 19, 24 (2d Cir. 2020).

Based upon the Court's conclusions thus far, looking to the totality of the circumstances, nothing here creates evidence of a hostile work environment claim. By way of recap, the conduct

underlying this claim for relief is that Plaintiff was: (1) denied a reasonable accommodation (which he was not, in fact, denied); (2) reassigned (which was for a legitimate, non-discriminatory reason); (3) "berated" by Cook (which was not an adverse employment action); and (4) deprived of COP benefits (which was also the product of a legitimate, non-discriminatory reason that Plaintiff could have rectified sooner). (*See* discussion *supra*). Still, even if the Court assumed that these events created a hostile work environment, the claim must still be dismissed because Plaintiff fails again to present a factually-based causal link tying these events to his alleged disability with anything except his belief that the events must be connected. *See Sosa v. New York Div. of Hum. Rts.*, No. 11-CV-05155, 2015 WL 5191205, at *13 (E.D.N.Y. Sept. 4, 2015) ("Sosa's own speculation is an insufficient nexus to make out a hostile work environment claim."); *cf. Staten v. City of New York*, No. 14-CV-04307, 2015 WL 4461688, at *14 (S.D.N.Y. July 20, 2015) (granting summary judgment where "aside from his own speculation, Plaintiff offers nothing to suggest . . . discriminatory motive"), *aff'd*, 653 F. App'x 78 (2d Cir. 2016).

In light of the fact that the conduct does not constitute that type of discriminatory, consistent ridicule envisioned by a hostile work environment claim and that Plaintiff failed to raise any genuine issue of material fact connecting these events to his disability, this claim for relief must be dismissed. Defendant's motion for summary judgment is, therefore, granted as to the hostile work environment claim under the Rehabilitation Act.[11] Insofar as Plaintiff sought summary judgment on this claim, that motion is denied.

---

[11] Defendant notes that Plaintiff, in his four-sentence discussion of harassment (three of which are rhetorical questions), claims he was harassed at the October 24, 2014 meeting. (Opp. Br. at 18). This theory was not raised in the Complaint and will not be entertained now. *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.").

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment on liability is GRANTED and Plaintiff's motion for summary judgment on liability is DENIED. The Complaint is, therefore, dismissed in its entirety. This action is not, however, terminated, because Defendant's counterclaims have not been resolved. Accordingly, the Court shall hold a status conference by telephone at 9:30 a.m. on December 1, 2021. At the time of that conference, the parties shall call: (888) 398-2342; access code: 3456831.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 94 and to amend the caption replacing the current Defendant—David J. Shulkin—with the current Secretary of the Department of Veterans Affairs, Denis McDonough.

**SO ORDERED:**

Dated:   White Plains, New York
       September 15, 2021

_____
PHILIP M. HALPERN
United States District Judge